1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10  MICHAEL McDONALD,

11          Plaintiff,                          CASE NO.  C05-1832-JLR-JPD

12      v.

13  MICHAEL PON, *et al*.,                       REPORT AND RECOMMENDATION

14          Defendants.

15

16

17                    INTRODUCTION AND SUMMARY CONCLUSION

18          Plaintiff is a state prisoner who is currently confined at the Washington State Penitentiary in

19  Walla Walla, Washington.  He brings this action under 42 U.S.C. § 1983 alleging violations of his

20  constitutional rights during his arrest for shoplifting in Federal Way, Washington.  Plaintiff names

21  three Federal Way police officers as defendants in this action:  Keith Pon, Mike Monico, and Mike

22  Sant.  Defendants Pon, Monico, and Sant now move for summary judgment.  Plaintiff has filed a

23  response to defendants' summary judgment motion and defendants have filed a reply brief in support

24  of their motion.

25

26  REPORT AND RECOMMENDATION
    PAGE - 1

Also pending before the Court is a motion to dismiss filed by an individual named Michael Monico who was apparently served by plaintiff with a copy of his amended complaint, but who avers that he is not the Mike Monico identified in plaintiff's amended complaint. Plaintiff has filed no response to Mr. Monico's motion. The Court, having considered the pending motions, the briefs of the parties, and the balance of the record, concludes that defendants' motion for summary judgment should be granted in part and denied in part, and that Michael Monico's motion to dismiss should be granted.

<u>FACTUAL BACKGROUND</u>

On January 24, 2003, Federal Way police officer Keith Pon was assigned to work at the Seatac Mall in Federal Way, Washington. (Dkt. No. 56 at 2.) At 2:43 p.m., Officer Pon was dispatched to the Sears store where store loss prevention personnel had reported that there was a person in the store whom they suspected of shoplifting. (*Id.*) Officer Pon was provided with a physical description of the suspect. (*Id.*) As he proceeded toward the North doors of the Sears store, Officer Pon radioed for back-up. (*Id.*)

At 2:54 p.m., Sears loss prevention personnel advised Officer Pon that plaintiff was pushing a shopping cart full of unpaid merchandise toward the West doors of the store. (*Id.*) Officer Pon proceeded toward the West doors and was about a hundred feet away when he saw one of the loss prevention agents, Michael Little, attempt to stop plaintiff. (*Id.*)

The Sears surveillance video of the incident shows that Mr. Little approached plaintiff quickly from the left side, lunged at him, and attempted to grab him. (*See* Dkt. No. 64, Ex. A[1].) Plaintiff

---

[1] The Court notes that it received copies of the surveillance video on CD-ROM from both plaintiff and from counsel for defendants. The Court cites only to defendants' submission as plaintiff's submission has not yet been assigned a docket number.

REPORT AND RECOMMENDATION
PAGE - 2

struggled with Mr. Little and then swung at him.  (Dkt. No. 64, Ex. A.)  Officer Pon observed this

interaction and saw plaintiff punch Mr. Little in the face.  (Dkt. No. 56 at 2.)  The surveillance video

shows that after hitting Mr. Little, plaintiff was standing on the sidewalk, apparently in the grasp of

Mr. Little, when another loss prevention agent rushed in and tackled plaintiff to the ground.  (Dkt. No.

64, Ex. A.) Plaintiff and two of the three loss prevention agents who were on the scene by that time

ended up on the ground.  (Dkt. No. 56 at 2.)

    According to plaintiff, once on the ground, his arms were grabbed and someone asked for a

pair of handcuffs.  (Dkt. No. 62 at 47.)  Plaintiff then heard someone yell "get back, get back," and the

loss prevention agents got up off of him.  (*Id*.)  Officer Pon confirms that when he arrived at the scene,

he instructed the loss prevention agents to get off of plaintiff.  (Dkt. No. 56 at 2.)  Plaintiff then stood

up, "feeling kind of quizzy" and Officer Pon ordered him to the ground.[2]  (*See* Dkt. No. 62 at 47 and

Dkt. No. 56 at 2.)  When plaintiff failed to comply with Officer Pon's commands that he get to the

ground, Officer Pon deployed his Taser for the first time.  (Dkt. No. 56 at 2.)

    The Taser is weapon that, when activated, fires two darts which are attached to the device by

wires.  (Dkt. No. 55 at 9.)  When the two darts make contact, a circuit is completed, and the device

discharges a 50,000 volt electrical current at very low amperage for a period of five seconds.  (*Id*. at 9

and 11.)  The electrical charge generated by the Taser works on the nerves to cause involuntary

muscle contractions.  (*Id*. at 9.)  The involuntary muscle contractions prevent the type of coordinated

motion that is required to fight or to flee.  (*Id*.)  The muscle contractions also cause pain.  (*Id*.)  The

---

[2]  Defendant Pon's declaration is not a model of clarity on this point as defendant Pon fails to
mention that plaintiff got up from the ground after the loss prevention personnel were ordered off of
him.  Defendant Pon's declaration, at first blush, suggests that he ordered plaintiff to the ground when
he was, in fact, already on the ground.  Nonetheless, plaintiff concedes that he got up and the
surveillance video confirms this fact.

REPORT AND RECOMMENDATION
PAGE - 3

defendants' purported expert on use of force options and Taser application, Christopher Myers, states that the muscle contraction caused by the Taser "is very similar in sensation and effect to muscle cramps." (Dkt. No. 55 at 9.)

In plaintiff's case, the darts struck him in the chest and in the forearm and the electrical charge caused him to fall to the ground. (*See* Dkt. No. 62 at 48.) Plaintiff's description of the experience suggests that, at least in his case, the "sensation" was extremely painful. (*See* Dkt. No. 62 at 48.)

Officers Sant and Monico arrived on the scene just after the first Taser application. (Dkt. No. 56.) According to Officer Pon, all three officers ordered plaintiff to put his arms outward and to get on his stomach, but plaintiff was being verbally combative at that time and refused to comply. (*Id.*) Officer Pon then deployed a second five-second Taser cycle. (*Id.*) The surveillance video appears to show that plaintiff was on his back on the ground, that he was putting his arms out, and that he was surrounded by at least four loss prevention agents and three police officers when defendant Pon deployed the second Taser cycle. (Dkt. No. 64, Ex. A.) After Officer Pon deployed the second Taser cycle, plaintiff rolled on the ground, kicking his legs vigorously. (*Id.*) Officers Sant and Monico then approached plaintiff to handcuff him. (*Id.*)

The Federal Way Fire Department responded to the scene to check both plaintiff and the loss prevention agent. (Dkt. No. 56 at 3.) Plaintiff had no serious injuries and declined aid. (*Id.*) The merchandise stolen by plaintiff consisted of six shirts valued at $328. (*Id.* at 5.) Plaintiff was charged in King County Superior Court with the crime of attempted robbery. (*See* Dkt. No. 54 at 4.) A jury found plaintiff guilty of the lesser included crime of theft in the second degree and plaintiff was sentenced to 12 months confinement. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 4

Plaintiff filed the instant civil rights action under 42 U.S.C. § 1983 in November 2005.  (*See* Dkt. No. 1.)  Plaintiff identified a number of defendants in his original complaint against whom he had not adequately alleged a cause of action or who were not subject to suit under § 1983.  (*See* Dkt. No. 10.)  Plaintiff filed an amended complaint in May 2006.  (Dkt. No. 16.)  In July 2006, the Court dismissed a number of the defendants identified in plaintiff's amended complaint and ordered service on Officers Pon, Monico, and Sant.  (Dkt. No. 18.)  The service packet mailed to Officer Monico was returned as undeliverable because Officer Monico was apparently no longer employed by the Federal Way Police Department at that time.  (*See* Dkt. No. 18.)  In December 2006, the Court issued an Order advising plaintiff that if he wished to pursue this action again defendant Monico, he would have to provide a current address at which this defendant could be served.  (Dkt. No. 28.)

In April 2007, counsel for defendants filed a summary judgment motion on behalf of defendants Pon, Monico, and Sant.  (Dkt. No. 53.)  In July 2007, the Court received from an individual named Michael Monico an answer to plaintiff's amended complaint together with a motion to dismiss the complaint in which Mr. Monico avers that he is not the Mike Monico involved in the January 24, 2003, incident.  (Dkt. Nos. 66 and 67.)  Attached to Mr. Monico's answer are:  (1) a motion to serve Mike Monico with a copy of the complaint, which was signed by plaintiff; (2) an affidavit in support of the motion to serve, which was signed by Robbie Massey of RM Legal Services; and, (3) a certificate of service, which was signed by Robbie Massey.  (Dkt. No. 66, Exhibit A.)  The certificate of service indicates that the motion to serve and the supporting affidavit were served on the Court, on Mr. Monico, on counsel for defendants, on the City of Federal Way, and on plaintiff.  (*Id.*)  However, those documents were never received by the Court.  The Court presumes

REPORT AND RECOMMENDATION
PAGE - 5

that Mr. Monico's submissions to the Court were prompted by his receipt of plaintiff's motion to serve which had a copy of plaintiff's amended complaint attached to it.

Plaintiff filed a response to defendants' motion for summary judgment, but did not file any response to Mr. Monico's motion to dismiss. Defendants' filed a reply brief in support of their motion for summary judgment. The matter is now ripe for review.

<u>DISCUSSION</u>

Plaintiff alleges in his amended civil rights complaint that defendants Pon, Monico, and Sant used unnecessary force in arresting him, and that defendants, through their conduct, violated his right to be free from unlawful arrest, search and seizure, his rights to due process and equal protection, and his right to be free from cruel and unusual punishment.

Defendants argue in their motion for summary judgment that plaintiff's claims must be dismissed because defendants did not violate any of plaintiff's constitutional rights. Defendants further argue that even if the Court were to find that they violated one or more of plaintiff's constitutional rights, they are entitled to qualified immunity.[3] Michael Monico argues in his motion to dismiss that plaintiff's claims against him must be dismissed because he is not a party to this lawsuit and because service was improper.

<u>Summary Judgment Standard</u>

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Defendants also argue that plaintiff is collaterally estopped from re-litigating any claims challenging the lawfulness of his arrest. However, while plaintiff alleges in his complaint that his arrest was unlawful, and that he was the victim of "mistaken identity," he concedes in his papers filed in response to defendants' summary judgment motion that his arrest was valid and that it is the manner in which the arrest was effectuated which is at issue here.

REPORT AND RECOMMENDATION
PAGE - 6

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*.  Material facts are those which might affect the outcome of the suit under governing law.  *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the non-moving party.  *Id*. at 248. The court may not weigh the evidence or make credibility determinations.  *Id*.

Excessive Force

The standard for analyzing claims of excessive force was established by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).  *Graham* instructs that such claims are to be evaluated under the Fourth Amendment's reasonableness standard:  "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citation omitted).  The Court cautioned that reasonableness must be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about

REPORT AND RECOMMENDATION
PAGE - 7

the amount of force that is necessary in a particular situation." *Id*. at 397.  The Court made clear that

proper application of the reasonableness standard requires careful consideration of the specific facts

and circumstances of each individual case, including "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

Defendants argue that they did not employ excessive force in arresting plaintiff, and that all

aspects of the arrest were reasonable and lawful.  Applying the standard set forth by the Supreme

Court in *Graham*, and viewing the facts in the light most favorable to the non-moving party, *i.e.*,

plaintiff, the Court finds that there is a genuine issue of material fact as to whether defendant Pon's use

of force was excessive.  The Court further finds that there is no genuine issue of material fact as to

whether defendant Sant's use of force was excessive. [4]

1.   <u>Officer Pon</u>

Plaintiff asserts that Officer Pon employed excessive force in effectuating plaintiff's arrest

when he deployed his Taser twice despite the fact that plaintiff never tried to resist.  Officer Pon

asserts that the first deployment of his Taser was justified because of plaintiff's "violent, non-

compliance, his assault on Mr. Little, his refusal to obey police commands, and the severity of the

crime."

The Court first notes that this incident began as a shoplifting offense.  The "shopping cart full

of unpaid for merchandise" (*see* Dkt. No. 56 at 2), apparently consisted of six shirts valued at just over

$300 (*see id*. at 5).  While plaintiff's conduct was certainly illegal, the offense was not particularly

---

[4]  Former Federal Way Police Officer Mike Monico is not a defendant to this action and
therefore the Court need not further address the claims asserted against this defendant.

REPORT AND RECOMMENDATION
PAGE - 8

serious in nature.  The incident took a more serious turn when Mr. Little, the Sears loss prevention agent, made the first contact with plaintiff.  The surveillance video appears to show that Mr. Little confronted plaintiff in a very aggressive fashion by attempting to grab him.  (Dkt. No. 64, Ex. A.)  The video does not have an audio component and, thus, it is unknown whether Mr. Little identified himself before physically confronting plaintiff.  Plaintiff responded physically to Mr. Little's attempt to grab him.  However, nothing in the video suggests that plaintiff was attempting to escape at that juncture.

In fact, the video appears to show plaintiff, after he hit Mr. Little, standing on the sidewalk with Mr. Little merely grasping him by one arm.  (Dkt. No. 64, Ex. A.)  The two did not appear to be struggling at that point.  (*Id.*)  At least two other loss prevention agents then entered the fray, tackling plaintiff to the ground.  (*Id.*)  At this point, the action moved outside the view of the surveillance camera.  Plaintiff asserts that while he was on the ground, the loss prevention agents had complete control over him, that he was not resisting, and that they could have handcuffed him at that point.

Officer Pon does not directly refute plaintiff's assertion that while he was on the ground he was not resisting and was in the control of the loss prevention agents.  In fact, he concedes that he ordered the loss prevention agents to get off of plaintiff.  (Dkt. No. 56 at 2.)  Plaintiff, in turn, concedes that once the loss prevention agents got off of him he stood up.  However, he describes himself as feeling "quizzy" at the time he stood up and it is not clear whether he comprehended Officer Pon's subsequent directive that he get back on the ground.  (*See* Dkt. No. 62 at 47.)  When plaintiff did not respond to Officer Pon's directive, Officer Pon deployed his Taser.  Nothing in the record demonstrates that plaintiff was actively resisting at that time or that he was attempting to flee.

REPORT AND RECOMMENDATION
PAGE - 9

After defendant Pon deployed his Taser and plaintiff fell to the ground, Officer Pon, as well as Officers Monico and Sant who had by then arrived at the scene, directed plaintiff to put his arms outward and to get on his stomach.  The surveillance video appears to show plaintiff putting his arms out to his sides just before Officer Pon deployed his Taser for the second time.  While Officer Pon asserts that plaintiff was being verbally combative at that juncture, he does not assert, nor does the video reflect, that plaintiff was actively resisting at that time.  Officer Pon states in his declaration that because plaintiff was being verbally combative and was refusing to comply with directives of the officers, he feared for the safety of his two fellow officers and the four loss prevention agents in the vicinity and therefore deployed a second Taser cycle.  (Dkt. No. 56 at 2.)

Because the surveillance tape lacks an audio component, the Court is unable to confirm that plaintiff was being verbally combative.  However, the circumstances, as described by the parties, and as portrayed in the surveillance tape, do not suggest that plaintiff posed an immediate threat to anybody prior to the time defendant Pon deployed his Taser the second time.  Plaintiff was on the ground at that time, he was not being physically combative nor, apparently, was he in possession of any weapons, and he was surrounded by three Federal Way police officers and four loss prevention agents.  It simply does not seem likely that plaintiff posed a threat to the safety of any of the officers or the loss prevention agents at that time.  Accordingly, this Court concludes that defendants' summary judgment motion should be denied with respect to plaintiff's claim of excessive force against Officer Pon.

2.      Officer Sant

Plaintiff asserts in his amended complaint that Officer Sant assisted in the unnecessary force that was employed by his fellow officers.  As noted above, plaintiff asserts that Officer Pon used

REPORT AND RECOMMENDATION
PAGE - 10

unnecessary force when he deployed his Taser.  Plaintiff also asserts that Officer Monico used excessive force against him when, after Officer Pon deployed the Taser the second time and plaintiff was on his stomach, Officer Monico aggressively grabbed and twisted plaintiff's arm and placed the handcuffs on so tightly that permanent scaring ensued.

Defendants argue, in a single sentence, that there is no evidentiary basis for plaintiff's claims against Officer Sant.  To the extent plaintiff asserts that Officer Sant participated with Officer Monico in the aggressive handcuffing of plaintiff, the record simply does not bear out such a claim.  Plaintiff offers no evidence that he suffered any injury as a result of the handcuffing and the surveillance video, which shows the handcuffing process, does not demonstrate that there was any overly aggressive action by either of the officers involved in the process.  (*See* Dkt. No. 64, Ex. A.)

To the extent plaintiff may intend to claim that Officer Sant is liable based upon his failure to intercede in the allegedly unconstitutional actions of Officer Pon, his claim must also fail.  Police officers may be held liable under § 1983 for failing to intercede "when their fellow officers violate constitutional rights of a suspect or other citizen. " *Cunningham v. Gates*, 229 F.3d 1271, 1289 (2000).  However, officers can be held liable on this basis only if they had the opportunity to intercede. *Id*.  The record does not reflect that Officer Sant had any realistic opportunity to intercede to prevent the alleged unconstitutional conduct of Officer Pon.  Accordingly, defendants' motion for summary judgment should be granted as to plaintiff's claims against Officer Sant.

<u>Due Process</u>

Plaintiff appears to assert in his amended complaint that defendants violated his Fourteenth Amendment due process rights by inflicting pain and suffering on him in the process of effectuating his arrest.  It is not necessary for the Court to address this claim because, as the Supreme Court made

REPORT AND RECOMMENDATION
PAGE - 11

clear in *Graham,* all excessive force claims arising out of an arrest must be analyzed under the Fourth

Amendment reasonableness standard. *Graham*, 490 U.S. at 395. Plaintiff's due process claim should

therefore be dismissed.

Equal Protection

Plaintiff also asserts in his amended complaint that defendants' use of force against him was

racially motivated because plaintiff is Black and the officers are Caucasian. In order to establish a

violation of the Equal Protection Clause, plaintiff must present evidence of discriminatory intent. *See*

*Washington v. Davis*, 426 U.S. 229, 239-40 (1976). Plaintiff offers no evidence whatsoever to

support the allegation that defendants' allegedly improper conduct was racially motivated.

Accordingly, defendants' motion for summary judgment should be granted with respect to plaintiff's

equal protection claim.

Cruel and Unusual Punishment

Finally, plaintiff asserts in his amended complaint that defendants' conduct violated his right to

be free from cruel and unusual punishment. While plaintiff does not specifically cite to the Eighth

Amendment in his amended complaint, he makes clear in his response to defendants' summary

judgment motion that he intends to pursue a claim under the Eighth Amendment. As defendants

correctly note, however, the Eighth Amendment has no application to plaintiff's arrest. The Supreme

Court has made clear that Eighth Amendment protections do not attach until after conviction and

sentence. *See Graham*, 490 U.S. at 393, n. 6; *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977).

Plaintiff's excessive force claims arising out of his arrest are properly analyzed under the Fourth

Amendment. Accordingly, plaintiff's Eighth Amendment claim should be dismissed.

REPORT AND RECOMMENDATION
PAGE - 12

1

Qualified Immunity

2

Defendants argue in their summary judgment motion that even if the court finds that

3

defendants violated one or more of plaintiff's constitutional rights, they are entitled to qualified

4

immunity.  Qualified immunity protects § 1983 defendants performing discretionary functions from

5

liability for civil damages so long as their conduct does not violate a clearly established constitutional

6

or statutory right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457

7

U.S. 800, 818 (1982).

8

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court clarified the test to be applied in

9

evaluating claims of qualified immunity.  The threshold inquiry in a qualified immunity analysis is

10

whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show

11

that the defendant's conduct violated a constitutional right.  *Id*. at 201.  If the reviewing court

12

concludes that no constitutional right was violated by the defendant's conduct, the court need not

13

inquire further.  *Id*.  However, if the reviewing court concludes that a constitutional right was violated,

14

the court must then determine whether the right was clearly established.  *Id*.  "The relevant, dispositive

15

inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

16

officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202.

17

As to Officer Pon, this Court has concluded that at least some questions exist as to whether his

18

conduct violated plaintiff's constitutional rights.  Accordingly, the Court must address the second

19

prong of the qualified immunity analysis.  Although no reported decision shares precisely the same

20

facts as the case at bar, a review of the relevant case law shows that the law regarding excessive force

21

was clearly established at the time of plaintiff's arrest.  The relevant factors for determining the

22

constitutionally permissible amount of force include "the severity of the crime at issue, whether the

23

24

25

26

REPORT AND RECOMMENDATION
PAGE - 13

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *See Graham*, 490 U.S. at 396.

Applying these factors to plaintiff's arrest, it seems clear that Officer Pon's conduct would not pass constitutional muster.  The offense committed by plaintiff was relatively minor.  Moreover, there is no evidence in the record that plaintiff was either actively resisting or attempting to escape at the times that Officer Pon deployed his Taser.  It therefore should have been clear to Officer Pon that his conduct was unlawful.  Accordingly, defendants fail to satisfy the second prong of *Saucier* and they are not entitled to qualified immunity in this action.

<u>Motion to Dismiss</u>

Plaintiff asserts claims in his complaint against Mike Monico, a former Federal Way Police Officer.  When this Court's effort to serve Officer Monico at the Federal Way Police Department failed, plaintiff located an individual by the name of Michael Monico in Port Orchard, Washington, and directed a copy of his amended complaint to that individual.  Michael Monico subsequently submitted to the Court, *pro se*, an answer to plaintiff's amended complaint and a motion to dismiss.  Mr. Monico avers in his papers that he has never been a police officer and that he was not involved in any incident at the Sears store in Federal Way, Washington on January 24, 2003.  Plaintiff offers nothing to refute Mr. Monico's assertions.  This Court is satisfied that the Michael Monico whom plaintiff served in this action is not the defendant for whom service was intended.  Accordingly, Michael Monico's motion to dismiss should be granted.

<u>CONCLUSION</u>

For the foregoing reasons, the Court recommends that defendants' motion for summary judgment be granted with respect to all of plaintiff's claims except his excessive force claim against

REPORT AND RECOMMENDATION
PAGE - 14

Officer Pon.  The Court further recommends that Michael Monico's motion to dismiss be granted.  A

proposed order accompanies this Report and Recommendation.

DATED this 15th day of October, 2007.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15