UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL MCDONALD,

        Plaintiff,

    v.

KEITH PON, et al.,

        Defendants.

CASE NO. C05-1832JLR

ORDER GRANTING SUMMARY JUDGMENT AND MOTION TO DISMISS

## I.   INTRODUCTION

This matter comes before the court upon a Report and Recommendation ("R&R") (Dkt. # 71) on Defendants' motion for summary judgment (Dkt. # 53) and Defendant Michael Monico's motion to dismiss (Dkt. # 67). Magistrate Judge Donohue recommends granting in part and denying in part the motion for summary judgment and granting the motion to dismiss. Having reviewed the R&R, the objections, and the balance of the record, the court adopts in part and rejects in part the R&R. The court GRANTS Defendants' motion for summary judgment and GRANTS Mr. Monico's motion to dismiss.

## II.   BACKGROUND

The R&R provides a thorough background of this matter, which the court incorporates by reference. The court provides a summary here.

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 1

Pro se Plaintiff Michael McDonald brought a 42 U.S.C. § 1983 action against Federal Way police officers Keith Pon, Mike Monico, and Mike Sant for alleged constitutional violations they committed while arresting Mr. McDonald. *See* Sec. Am. Compl. at 2-6.

On January 24, 2003, loss prevention agents ("LPAs") at the Seatac Mall Sears reported to Federal Way Police that they suspected Mr. McDonald of shoplifting. Pon Decl. ¶ 3. Federal Way Police Dispatch reported Mr. McDonald's description to Officer Pon, who radioed for back-up and proceeded to Sears' north doors. *Id.* LPAs advised Officer Pon that Mr. McDonald was pushing a shopping cart of unpaid merchandise toward Sears' west doors. *Id.* at ¶ 4. Officer Pon was about a hundred feet from the west doors when he saw Mr. McDonald exit the Sears. *Id.* Officer Pon observed the following chain of events: an LPA attempted to physically apprehend Mr. McDonald; Mr. McDonald struggled with and punched the LPA in the face; and a second LPA rushed in and tackled them both to the ground. *Id.*

Officer Pon instructed the LPAs to get off of Mr. McDonald. *Id.* At this point, Mr. McDonald stood up. Resp. Mot. for Summ. J. (McDonald Decl. at 3). Officer Pon ordered Mr. McDonald to the ground. Pon Decl. ¶ 4. When Mr. McDonald failed to comply, Officer Pon deployed his Taser. *Id.* After the first Taser cycle, surveillance video depicts Mr. McDonald moving back toward the west doors where he struggled again with an LPA and fell down. *See* Miller Decl., Ex. A (surveillance video). Officers Sant and Monico arrived on scene, and all three ordered Mr. McDonald to roll onto his stomach and extend his arms. Pon Decl. ¶ 5. Mr. McDonald appeared to be verbally

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 2

combative and ignored the officers' orders.[1]  *Id.*  Officer Pon deployed another five-second Taser cycle.  *Id.*  Subsequently, the officers arrested Mr. McDonald without incident.[2]  *Id.*

Defendants Pon, Sant, and Monico filed a motion for summary judgment, and Defendant Michael Monico filed a motion to dismiss the claims against him.[3]  The court adopts the R&R except as to the magistrate judge's analysis and conclusions regarding the denial of summary judgment to Officer Pon.  The court provides its analysis only for those aspects of the R&R that it does not adopt.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets its

---

[1] Mr. McDonald objects to the characterization of his verbal "outburst" as combative.  Obj. to R&R at 2-3.  He does not dispute, however, that he was "upset" by the application of the first Taser cycle and made his state of mind clearly and forcefully known.  *See id.*

[2] Mr. McDonald does not materially contradict Officer Pon's version of the events.  For example, Mr. McDonald admits going to Sears with the intent to shoplift.  *See* Resp. Mot. for Summ. J. (McDonald Decl. at 2).  He was aware that, based on his actions, Sears' personnel would likely suspect him of shoplifting.  *See id.* (McDonald Decl. at 2-3).  He acknowledged that he pushed a shopping cart of unpaid merchandise out Sears' west doors.  *See id.* (McDonald Decl. at 3).  Mr. McDonald stated that he used "impact force" on the LPA who tried to apprehend him.  *See id.* (McDonald Decl. at 3).

[3] Apparently, the Michael Monico that Mr. McDonald served is not the same Mike Monico that was involved in Mr. McDonald's arrest.

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 3

burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

**B.     Excessive Force**

Mr. McDonald contends that Officer Pon used excessive force in effectuating Mr. McDonald's arrest. Sec. Am. Compl. at 6. All claims of excessive force are analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine whether force is reasonable, a court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation and citations omitted). Among the factors to consider are the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest. *Id.* A court may also consider the availability of alternative methods of capturing or subduing a suspect in determining reasonableness. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

The reasonableness inquiry is objective and should be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (internal quotation and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Police officers

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 4

necessarily have the right to use a degree of physical coercion or threat of such force to effectuate an arrest. *See id.* at 396.

Before turning to reasonableness, the court examines the quantum of force used on Mr. McDonald. *See, e.g., City of Hemet*, 394 F.3d at 701. Taser use is considered an intermediate control tactic. *See* Myers Decl., Ex. A (Expert Report at 12). Officers consider the following non-lethal force options: (1) impact force[4], including baton strikes, punches, and kicks; (2) physical body force[5]; (3) chemical agents[6]; and (4) Taser. *Id.* at 4. A Taser works by causing involuntary muscle contractions, similar to muscle cramps, that preclude the suspect from engaging in the type of coordinated motion necessary to fight or flee. *Id.* at 6-7. Following a Taser cycle, the suspect's muscles may feel fatigued, but the nerves and body are left undamaged.[7] *Id.* at 7.

It is undisputed that Officer Pon employed only Taser cycles. It was the LPAs who grappled repeatedly with Mr. McDonald. Furthermore, other than superficial skin markings and the temporary pain associated with muscle contractions, there are no indications that Mr. McDonald suffered any injuries from the Taser applications.

---

[4] Impact force is more likely than other force options to create lasting injury because the officer has to strike the suspect repeatedly to damage some portion of the suspect's body or generate enough pain to persuade the suspect to comply. Myers Decl., Ex. A (Expert Report at 4).

[5] Physical body force is effected by using body weight and muscle strength to wrestle or submit a suspect into compliance. Myers Decl., Ex. A (Expert Report at 5). Body force requires close proximity; thus, this option carries a greater potential for injury to the officer should the force prove ineffective against the suspect. *Id.*

[6] Chemical agents inflame the mucous membranes, impairing a suspect's vision and breathing, and they carry a lengthy decontamination time. Myers Decl., Ex. A (Expert Report at 5).

[7] A Taser may cause some superficial injuries, such as small abrasions and skin markings. *See* Myers Decl., Ex. A (Expert Report at 7-8).

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 5

Considering the facts and available options, the quantum of force Officer Pon used to arrest Mr. McDonald was not severe. The court considers the *Graham* factors in this light.

### 1. Severity of the Crime

In determining whether Officer's Pon's use of force was reasonable, the court first considers the severity of the crime under investigation. *See Graham*, 490 U.S. at 396. Immediately prior to the Tasing incident, police dispatch reported to Officer Pon that Mr. McDonald was suspected of shoplifting. Pon Decl. ¶ 3. Officer Pon saw Mr. McDonald exit the Sears with a shopping cart of merchandise and begin to grapple with an LPA. *Id.* at ¶ 4. Officer Pon observed Mr. McDonald punch the LPA in the face. *Id.* This punch increased the severity of the suspected crime from shoplifting to a possible first degree robbery. A person is guilty of robbery in the first degree if, in the commission of a robbery[8] or of immediate flight therefrom, he or she inflicts bodily injury. RCW § 9A.56.200(1)(a)(iii). First degree robbery is a class A felony. RCW § 9A.56.200(2). Thus, an objectively reasonable officer in Officer Pon's shoes would have been required to make use-of-force decisions in response to a possible class A felony.

### 2. Threat to Officers and Others

---

[8] Robbery is defined, in relevant part, as follows:

A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW § 9A.56.190.

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 6

The second *Graham* factor is whether the suspect poses an immediate threat to the safety of the officers or others. 490 U.S. at 396. From Officer Pon's perspective, Mr. McDonald had already punched an LPA in the face, which would demonstrate to an objectively reasonable officer that Mr. McDonald was willing to resort to violence. *See* Pon Decl. ¶ 4. In addition, Mr. McDonald appeared to be verbally combative and ignored Officer Pon's commands. *Id.* at 4-5. Given these facts, Officer Pon reasonably could have believed that Mr. McDonald posed an immediate threat to the safety of the officers and the LPAs.

### 3. Resisting or Evading Arrest

The third factor under *Graham* is whether the suspect actively resisted arrest or attempted to evade arrest by flight. 490 U.S. at 396. Refusing to comply with an officer's lawful commands, or making movements or verbal gestures that indicate an unwillingness to cooperate with a police officer's lawful commands can constitute active resistance. *See Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002); *see also Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004). Because Mr. McDonald punched an LPA in the face, an officer in Officer Pon's shoes reasonably could have believed that Mr. McDonald was attempting to avoid apprehension, and that he would continue to take steps, including resorting to violence, to avoid arrest.

Throughout the incident, Mr. McDonald failed to comply with Officer Pon's lawful commands. Once Officer Pon ordered the LPAs off of Mr. McDonald, Mr. McDonald stood up. Resp. Mot. for Summ. J. (McDonald Decl. at 3). Officer Pon ordered Mr. McDonald to the ground and deployed his Taser only after the directive was ignored. *See* Pon Decl. ¶ 4. After the first Taser cycle, surveillance video depicts Mr. McDonald grappling with another LPA and falling down. *See* Miller Decl., Ex. A

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 7

(surveillance video). Officers Pon, Sant, and Monico ordered Mr. McDonald to roll onto his stomach and extend his arms. Pon Decl. ¶ 5. Mr. McDonald was belligerent and ignored the officers' orders. *Id.* Officer Pon deployed another five-second Taser cycle. *Id.* Under these circumstances, Officer Pon reasonably could have believed that Mr. McDonald was actively resisting arrest.

### 4.   Availability of Alternative Methods

A court may also consider the availability of alternative methods of capturing or subduing a suspect in determining reasonableness. *See City of Hemet*, 394 F.3d at 701. Verbal commands alone had proven ineffective against Mr. McDonald, so some level of force was required. *See* Pon Decl. ¶¶ 4-5. By using his Taser, Officer Pon was able to obtain compliance while remaining a safe distance from Mr. McDonald. By comparison, close proximity would have been necessary for impact or body force, and those options would have presented a greater risk of lasting injury to both Mr. McDonald and Officer Pon. *See* Myers Decl., Ex. A (Expert Report at 4-5). In addition, chemical agents would have carried a risk of self-contamination, and their use would have required a lengthy decontamination period. *Id.* at 5. A reasonable officer on the scene could have believed that the Taser was the safest and most effective force option available.

Applying the *Graham* reasonableness factors to the facts in the light most favorable to Mr. McDonald, the court concludes that Mr. McDonald has not made out a Fourth Amendment violation for excessive force. Officer Pon is, therefore, entitled to summary judgment in his favor.

### C.   Qualified Immunity

Even if genuine issues of fact exist as to excessive force, summary judgment is proper because Officer Pon is entitled to qualified immunity. The determination of

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 8

qualified immunity follows a two-part test. First, the court must consider, in the light most favorable to Mr. McDonald, whether the facts demonstrate that Officer Pon's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need not inquire further. *Id.* Second, if a violation can be made out, the court must determine whether the right was clearly established by asking whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted. *Id.* at 201-02. Even if Officer Pon would not already be afforded qualified immunity based on the first inquiry, he is entitled to qualified immunity based on the second inquiry: whether the right at issue was clearly established at the time of Mr. McDonald's arrest.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Supreme Court emphasized that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." *Saucier*, 533 U.S. at 201. Qualified immunity operates "to protect officers from the sometimes hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206 (internal citation and quotation omitted).

There was no prior case law or authority that would have put Officer Pon on notice that using a Taser under these circumstances was clearly unlawful.[9] *See id.* at 209

---

[9] Although its decision post-dates Mr. McDonald's arrest, the Eleventh Circuit has held that an officer's decision to use his Taser on a non-violent suspect was lawful under the circumstances because the suspect was hostile, belligerent, and ignored the officer's commands.

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 9

(holding that the right in question was not clearly established because "neither respondent nor the Court of Appeals has identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did, nor are we aware of any such rule"). Thus, the right in question was not clearly established at the time of Mr. McDonald's arrest, and Officer Pon is entitled to qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, the court adopts in part and rejects in part Judge Donohue's R&R (Dkt # 71). The court GRANTS Defendants' motion for summary judgment (Dkt. # 53) and GRANTS Defendant Michael Monico's motion to dismiss (Dkt. # 67).

Dated this 14th day of December, 2007.

JAMES L. ROBART
United States District Judge

---

*See Draper*, 369 F.3d at 1278.

ORDER GRANTING SUMMARY JUDGMENT
& MOTION TO DISMISS – 10